In the Matter of ANSCHEL E. BARSHAY, an Attorney, Respondent.

First Department, June 6, 1941.

*S. C. Lewis* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*Benjamin J. Rabin* of counsel [*Bernard Botein* and *Abraham J. Gellinoff* with him on the brief; *Albert E. Schwartz*, attorney], for the respondent.

PER CURIAM. The respondent and one James Manzi conspired to obtain possession of property of the value of between $50,000 and $60,000 owned by one Evelina L. Tietjen, now deceased. Mrs. Tietjen, a widow seventy-four years old, suffered from paralysis

agitans, senile deterioration of the brain and diabetes. Her mental competency was at least questionable.

In the last week of December, 1933, James Manzi, whom Mrs. Tietjen employed as nurse, chauffeur and personal attendant, brought her to the respondent's office for legal advice in connection with a certain mortgage which she was unable to locate. Mrs. Tietjen then or shortly thereafter expressed her intention of marrying James Manzi, a youth of twenty years. The respondent suggested that instead of marrying him she adopt him. According to the respondent's own testimony, he thought that better calculated to satisfy Mrs. Tietjen's expressed desire to have James Manzi take care of and protect her and at the same time achieve the confessed purpose of James Manzi to acquire Mrs. Tietjen's property in return for serving her for a few years.

The respondent thereafter persuaded Mrs. Tietjen to consent to adopt James Manzi. He instituted and carried to completion a proceeding wherein she legally adopted Manzi. In that proceeding he failed to disclose to the surrogate that Mrs. Tietjen had at first desired to marry James Manzi. Instead, he falsely represented to the surrogate that when he first met Mrs. Tietjen she disclosed her intention of adopting James Manzi. He also failed to disclose to the surrogate the fact that of three physicians who examined Mrs. Tietjen as to her mental competency, two questioned her competency. One of these physicians, a Dr. Riebel, was a personal friend of the respondent. The latter requested him to certify to the surrogate that Mrs. Tietjen was mentally competent notwithstanding that the doctor had said that, in his opinion, she was not. Failing in this, the respondent induced the physician to omit from his certificate any reference to her mental competency. He further concealed the fact that an assistant district attorney had suggested that incompetency proceedings be instituted.

In the interim the respondent also drew and had Mrs. Tietjen execute a will in which she left her entire estate to James Manzi and designated the respondent sole executor without bond. He and James Manzi went with Mrs. Tietjen to four savings banks, in which she maintained accounts in trust for certain of her relatives, and had the accounts transferred either to James Manzi or jointly to the latter and herself. At the same time he obtained powers of attorney to himself from Mrs. Tietjen and James Manzi. Within a few weeks thereafter he withdrew $3,800 from the accounts. Of this he claimed that $1,250 had been applied in payment of his fees for services rendered and to be rendered Mrs. Tietjen. The difference, he testified, had been paid to or expended for her. With the exception of amounts totaling $213, there is no evidence beyond

his own uncorroborated testimony that any portion of said moneys ever reached Mrs. Tietjen or were expended for her benefit. An attorney under circumstances here present cannot rely upon the claim that affirmative proof of misapplication of moneys is lacking. It is incumbent upon him to prove the proper application thereof.

Mrs. Tietjen died on March 26, 1934. Thereafter, certain members of her family opposed probate of the will drawn by the respondent and also instituted proceedings to set aside the adoption. The will was refused probate. The adoption proceeding was vacated. In so doing, Surrogate WINGATE said: " The surrogate is satisfied from all facts and circumstances, and after hearing all the evidence and weighing the credibility of the testimony, that the adoption was the result of a deliberate conspiracy to obtain possession of Mrs. Tietjen's property and that the facts of the proposed marriage and her mental condition were intentionally and fraudulently withheld from the surrogate in order to procure his approval of the adoption."

The record herein clearly confirms the conclusion reached by the surrogate and by the referee in this proceeding. In fact it is the only conclusion of which the record reasonably is susceptible.

The respondent should be disbarred.

Present — MARTIN, P. J., O'MALLEY, GLENNON, UNTERMYER and DORE, JJ.

Respondent disbarred.